CA, INC., Computer Associates Think, Inc., Platinum Technology International, Inc. and Platinum Technology IP, Inc., Plaintiffs,

v.

ROCKET SOFTWARE, INC., Defendant.

No. 07CV1476 (ADS)(MLO).

United States District Court, E.D. New York.

Sept. 17, 2008.

Kaye Scholer LLP, New York City (Scott G. Lindvall, Betty Ryberg, of counsel), Sullivan & Cromwell, New York City (David B. Tulchin, Jordan Toumey Razza, Matthew J. Porpora, of Counsel), for Plaintiffs.

Skadden, Arps, Slate, Meagher & Flom, New York City (Thomas J. Dougherty, Justin Jarman Daniels, Paramjeet Singh Sammi, of counsel), for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

## I. BACKGROUND

The following facts are derived from the pleadings and the parties' submissions on the present motion.

This action arises from alleged misappropriation and infringing use of the plaintiffs' computer software source code and ancillary material by the defendant, Rocket Software, Inc. ("Rocket"). Rocket is a Delaware Corporation, with its principal place of business in Massachusetts, that manufactures enterprise infrastructure products for major original equipment manufacturers ("OEMs"), networks, and software companies, such as IBM. The plaintiffs, CA, Inc., Computer Associates Think, Inc., Platinum Technology International, Inc. and Platinum Technology IP, Inc. (collectively, "the plaintiffs" or "CA") are Delaware corporations with their principal place of business in New York. CA creates and develops information technology management software, and provides information technology, support and integration services to many business entities.

Both CA and Rocket develop database administration software. Database administration software is used to store, organize, and access the massive amounts of electronic information accumulated by most modern businesses. Businesses often hire database administrators ("DBAs") who rely on database administration software to restructure, reconfigure and update their databases, and keep them running efficiently.

The principal database for mainframe computer systems is known as the "DB2" system and is marketed and sold by IBM. CA, Rocket, and their competitors develop, market, and sell database administration software that is compatible with IBM's DB2 database management system. One of the valuable components of DB2 database administration software is its source code, comprised of human-readable code that dictates the function and appearance of a software product.

In June of 1997, CA acquired Platinum, a company headquartered in Oakbrook Terrace, Illinois. Platinum had developed a number of valuable database administration software products compatible with IBM's DB2. The plaintiffs allege that shortly after the acquisition, Rocket hired four former Platinum software engineers, all of whom had full access to CA's source code for its DB2 products, as well as certain non-copyrightable materials, such as its DB2 "product development environment." (Amend.Comp.¶¶ 26, 34–35). The plaintiffs further allege that before the former Platinum engineers left to join Rocket, one or more of them downloaded onto their laptops and/or other electronic media, or otherwise appropriated some or all of the source code for Platinum's (now CA's) DB2 product line. (Amend.Comp. ¶ 35). The plaintiffs contend that once at Rocket, one or more of the former Platinum engineers set up a "product development environment" substantially identical to that of Platinum and CA, to allow Rocket's developers to use it as a guide for the development of competing products. (Amend.Comp.¶ 35).

The plaintiffs further allege that prior to leaving CA and entering employment with Rocket, one of the Platinum engineers, Mark Pompeii, threatened to copy CA's entire DB2 product source code library and development environment. (Amend. Comp.¶ 36). The plaintiffs contend that after joining Rocket, Pompeii boasted to former CA colleagues about successfully replicating CA's DB2 development environment and using it to set up Rocket's DB2 development environment. (Amend. Comp.¶ 36).

The plaintiffs allege that less than one year after the former Platinum engineers joined Rocket, it entered the DB2 database administration software market, and within a short period of time produced nearly a full line of DB2 database administration products bearing substantial similarity to CA's products. (Amend. Compl.¶¶ 37–41). The plaintiffs allege that in or about 2001, two CA customers notified the company that its program was abnormally ending when run simultaneously with one of Rocket's DB2 products. (Amend.Compl.¶ 43). A comparison of the output data by the two products led CA to believe that Rocket's product was modeled after an earlier version of CA's product. (Amend.Compl.¶ 43).

This prompted CA to write a formal letter to Rocket in July of 2001, in which CA requested Rocket to investigate the possibility that one or more of its developers may have used CA's source code to develop Rockets DB2 products. (Amend. Comp.¶ 44). Rocket responded to CA on August 23, 2001, and denied any wrongdoing. Rocket stated that it "conducted an investigation . . . in the fullest manner possible," and concluded that no developer familiar with the CA product line participated in the development of the Rocket product, or used CA code in the development of any Rocket product. (Amend. Comp., Exh. A). The plaintiffs allege that, relying on these representations, it did not pursue the matter any further at that time.

The plaintiffs further contend that several years later, in 2004, CA received an anonymous letter, apparently written by a Rocket employee, informing CA that "the theft of CA IP both . . . code lifts and a transfer of knowledge between former employees [of Platinum]" related to "the majority of the DB2 software products produced by Rocket Software. . . ." (Amend. Comp. ¶ 46, and Exh. B). This anonymous letter prompted CA to hire outside counsel to contact Rocket and to investigate the matter. (Amend.Comp.¶ 47). The plaintiffs allege that thereafter, CA and Rocket sought to negotiate a source code inspec-

tion of Rocket's product by an independent third party, but Rocket never made its source code available for inspection. (Amend.Comp.¶ 47). Conversely, Rocket contends that it was willing to submit its code to a third party for inspection, but CA would not agree to the terms of the inspection. Further, the defendant maintains that it never misappropriated CA's source code or ancillary property, but instead invested significant resources independently developing its own DB2 product line.

The amended complaint contains the following Counts:

Count I—Copyright infringement pursuant to Section 106 of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* Included with this Count, the plaintiffs claim statutory damages pursuant to § 504(c) of the Copyright Act or in the alternative, the plaintiffs claim actual damages from profits of the alleged infringement pursuant to § 504(b) of the Copyright Act. In addition, the plaintiffs seek costs and reasonable attorneys' fees pursuant to § 505, and a permanent injunction pursuant to § 502.

Count II—Misappropriation of trade secrets pursuant to the Illinois Trade Secrets Act, 765 I.L.C.S. § 1065/2(b), including enhanced damages and attorneys' fees.

Count III—Unfair competition pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 I.L.C.S. § 505/2 *et seq.*

Count IV—Conversion.

Count V—Trespass to chattels.

Count VI—Intentional interference with prospective economic advantage.

Count VII—Unjust enrichment.

Presently before the Court is the defendant's motion to dismiss portions of the complaint. The Court will address each Count in turn.

## II. DISCUSSION

At the pleading stage of litigation, the plaintiff need only provide a " 'short and plain statement' " that " 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)); *see also* Fed.R.Civ.P. 8(a)(2). This notice pleading standard expects "liberal discovery rules and summary judgment motions to define disputed facts and issues to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992, 152 L.Ed.2d 1.

In considering a 12(b)(6) motion to dismiss, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In this regard, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999).

Further, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). According to the Second Circuit, "[i]n last term's Twombly decision ... the Supreme Court held that a complaint must allege

facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir.2007). Indeed, the Twombly Court noted that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (internal citations omitted).

### 1. Count I—Copyright Infringement

#### A. Statute of Limitations

■ The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Rocket contends that because this action was filed on April 9, 2007, any activity occurring before April 9, 2004 is time-barred for the purposes of CA's Copyright Act claims. The plaintiffs assert that the statute of limitations should be equitably tolled, or the defendant equitably estopped from asserting a statute of limitations defense because it repeatedly provided the plaintiffs with detailed assurances that it did not infringe CA's product.

The defendant argues that notwithstanding its representations, CA cannot raise tolling based upon fraudulent concealment without also asserting that it acted with due diligence in pursuing discovery of the claim and that the defendant's actions prevented CA from discovering the nature of its claim. The defendant contends that once CA was put on notice of its potential claim in 2001, any subsequent denials of wrongdoing by Rocket cannot act to toll the statute of limitations.

Regardless of the Court's determination of the tolling issue, the plaintiffs' claims based on alleged acts of infringement occurring on or after April 9, 2004 are timely. *See Roberts v. Keith*, No. 04CV10079, 2006 WL 547252, at *4 (S.D.N.Y. March 07, 2006) (" 'Each act of infringement is a distinct harm giving rise to an independent claim for relief.' ") (quoting *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992)). The courts in this Circuit have widely held that a claim for infringement accrues on the date of the alleged infringement rather than on the date infringement is discovered by the plaintiff, and the Court adopts that view. *Vasquez v. Torres–Negron*, No. 06CV619, 2007 WL 2244784, at *7 (S.D.N.Y. July 11, 2007) (citing *Auscape Int'l. v. National Geographic Society*, 409 F.Supp.2d 235 (S.D.N.Y.2004)); *Roberts*, 2006 WL 547252, at *3. Having determined that a claim accrues with the act of infringement, courts have likewise recognized that the statute of limitations may be equitably tolled where the defendant's acts prevent the plaintiff from enforcing its rights.

In *Auscape*, Judge Kaplan examined the text and legislative history of the Copyright Act and found that "Congress intended to adopt a three-year limitations period running from the date of the infringement. . . ." *Auscape*, 409 F.Supp.2d at 247. Further, Judge Kaplan noted that Congress' consideration of statutory exemptions for fraudulent concealment was an indication that a date of injury rule, rather than a date of discovery rule, applied because "[h]ad those involved in the hearings thought that a discovery rule would govern accrual of an infringement claim … a statutory exception for fraudulent concealment would have been entirely superfluous." *Id.* at 246–27. Finally, the court stated that "Congress declined to [enact a fraudulent concealment exception] because it expected that federal courts would continue to apply fraudulent concealment and

other equitable case law as they had done previously." *Id.* at 247 n. 55. Accordingly, tolling of the three year statute of limitations remains available in actions where the defendant has concealed its infringing activities.

■ In order to invoke equitable tolling based on fraudulent concealment the plaintiff must plead with particularity: (1) wrongful concealment by the defendant; (2) which prevented the plaintiffs' discovery of the nature of the claim within the limitations period; and (3) the plaintiffs' due diligence in pursuing discovery of the claim. *Roberts*, 2006 WL 547252, at *4. To satisfy the particularity requirement, the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id.*

■ Separately, "[a] defendant may be equitably estopped to assert the statute of limitations as a defense 'in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused the plaintiff to delay in bringing his lawsuit.'" *Tomas v. Gillespie*, 385 F.Supp.2d 240, 247 (S.D.N.Y.2005) (quoting *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995)). "'A court may estop a defendant from asserting a statute of limitations defense if the defendant's conduct induced the plaintiff to postpone bringing suit on a known cause of action.'" *Tomas*, 385 F.Supp.2d at 248 (quoting *Beneficial Capital Corp. v. Richardson*, No. 92CV3785, 1995 WL 324768, at *5 (S.D.N.Y.1995)).

Under either doctrine, the plaintiff must establish that delay was not caused by its own lack of diligence. *See Price v. Fox Entertainment Group, Inc.*, 473 F.Supp.2d 446, 455 (S.D.N.Y.2007) (discussing equita-

ble tolling and equitable estoppel in an authorship dispute). "A plaintiff who *unreasonably* relies on the reassurances of a wrongdoer has not satisfied this obligation of due diligence." *Id.* (emphasis supplied).

■ Here, the plaintiff has adequately pleaded fraudulent concealment. The complaint sets forth a detailed explanation of how CA's suspicions of infringement first arose in 2001 and the exculpatory letter offered by the defendant, averring that it had conducted an investigation and assuring CA that its suspicions were baseless. (Amend.Compl.¶¶ 44–45). Further, the complaint alleges that the plaintiffs relied on the defendant's representations, taking Rocket "at its word" and made no further inquiries until their suspicions were once again raised by an anonymous letter indicating that Rocket had misappropriated and used at least some of CA's software code. (Amend.Compl.¶¶ 45–46). After receiving this anonymous letter sometime in 2004, the plaintiffs hired outside counsel to contact Rocket and investigate the situation. (Amend.Compl.¶ 47). Thereafter, the parties engaged in unsuccessful negotiations for the inspection of Rocket's source code. .

The plaintiffs' actions in repeatedly contacting Rocket and asking it to investigate possible misuse of CA intellectual property, as well as their attempts to arrange inspection of Rocket's source code amount to nothing less than diligence in pursuing discovery of their claims. *Cf. Cooper v. Sony Records Intern*, No. 00CV233, 2001 WL 1223492, at *3 (S.D.N.Y. Oct. 15, 2001) (finding that plaintiffs failed to allege diligence where there were no allegations that plaintiffs ever questioned royalty statements produced by the defendant or sought to inspect or audit the defendant's books).

In addition, the defendant contends that the plaintiffs were aware of a potential copyright infringement claim from the moment they determined that the output of Rocket's product was similar to that of an earlier CA product and should have instituted an action at that time. The defendant argues that although its denials in response to CA's inquiries may have prevented CA from uncovering evidence in support of its claim, they did not prevent CA from discovering the existence or nature of a potential claim. However, the Court finds that Rocket's repeated, detailed assurances that its product was independently developed and that no person involved in engineering its program had any access to or knowledge of the plaintiffs' DB2 database administration products, if untrue, went beyond merely preventing CA from gathering evidence in support of its claims. Such assurances would work a deception capable of lulling the plaintiffs into believing their suspicions were baseless.

In this regard, the defendant's reliance on *Barksdale v. Robinson*, 211 F.R.D. 240 (S.D.N.Y.2002), is unavailing. In *Barksdale*, the plaintiff claimed that he was the sole author and exclusive owner of the rights to two musical compositions and filed suit against a party claiming co-ownership. *Id.* at 243. The plaintiff alleged that the defendant "claimed ownership, administration, and publishing interests in the [c]ompositions from their creation to date." *Id.* The court found that the plaintiff's claims were time-barred as the plaintiff was aware of the defendants claims of co-ownership well before the limitations period. *Id.* at 244. Important to the court's analysis was that knowledge of the defendant's actions was attributed to the plaintiff by "cease and desist" letters sent to the defendant by the plaintiff's attorneys more than three years before the action was filed. *Id.* In addition, the court

found that the plaintiff's claims of estoppel were unfounded as there were "no facts indicating egregious wrongdoing on the part of [the defendant] that prevented [the plaintiff] from filing a timely action once he had reason to believe that a valid copyright claim existed."

*Barksdale* differs from the present action in several important respects. First, with regard to the claim in that case, the statute of limitations for a copyright *ownership* claim is said to accrue when the plaintiff knows or has reason to know of the injury upon which his claim is based. *Id.* at 244. This standard is akin to the former "discovery rule" applied to infringement actions. However, as it is presently widely recognized in infringement actions that the statute of limitations runs from the time of the infringement, plaintiffs lose the benefit of the time between the act of infringement and discovery. Accordingly, the extra measure of protection accorded by equitable tolling where defendants seek to secret their activities works to balance the equities that would otherwise be lost.

Second, in *Barksdale*, the court relied on three cease and desist letters sent by the plaintiff's attorneys as evidence of the plaintiff's knowledge of the defendant's ownership claim outside of the limitations period. *Id.* at 244. However, the cease and desist letters in *Barksdale* are not the same as the inquiry letters sent by the plaintiffs here. The letters here asked the defendant to investigate the possibility of infringing, rather than demanding cessation of a known infringement. In addition, even if it can be said that CA's 2001 letter showed an inkling of suspicion of infringement, the defendant's actions reasonably worked to allay CA's concerns. In *Barksdale*, in contrast, the plaintiff's letters established that he was aware of the defendant's claims of co-ownership at a time

well outside the limitations period. *Id.* at 243.

Finally, among the acts of concealment alleged by the plaintiff in *Barksdale* was the fact that the defendant failed to inform the plaintiff that he filed a copyright registration for the works at issue. *Id.* at 245. The failure to inform the plaintiff regarding infringing activities is manifestly different than affirmatively and actively denying infringement, as Rocket did here.

Further, the Court finds the plaintiff has plead facts, which if true, are sufficient to equitably estop the defendant from asserting the statute of limitations as a defense. The plaintiffs should not be punished for reasonably relying on the defendant's affirmative representations of independent development and its detailed, emphatic denials of copying. The Court finds that based on the facts alleged in the complaint, the plaintiffs reasonably waited to file suit until they were more certain of the existence of possible infringement. Accordingly, the defendant's motion to dismiss CA's copyright infringement claim on statute of limitations grounds is denied.

### B. As to Statutory Damages and Attorneys' Fees

The defendant contends that the plaintiffs should be precluded from seeking statutory damages and attorneys' fees in this action. The defendant argues that CA's failure to register its copyrights prior to the first act of alleged infringement precludes recovery of statutory damages or attorneys' fees, even where the infringement is alleged to be ongoing. The plaintiff takes the opposite position and argues that precisely because the defendant's infringement is alleged to be ongoing, it is entitled to seek statutory damages and attorney's fees despite its late registration date.

Under 17 U.S.C. § 412, no award for statutory damages shall be made for "(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(1) & (2). In *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150 (2d. Cir.2007), the Second Circuit examined the issue of whether an infringement "continue[d]" for the purpose of determining ownership status. In performing its analysis, the Court relied heavily upon prior judicial interpretation of the term "commenced" in Section 412, stating:

> Under 17 U.S.C. § 412, a plaintiff may not recover statutory damages or attorney's fees for any infringement 'commenced' before the effective date of a copyright's registration. The courts have held, based on the provision's text, legislative history, and purpose, that a plaintiff may not recover statutory damages and attorney's fees for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration....

> [However], the legislative history of section 104A suggests that Congress understood section 412 to mean that a post-registration act of infringement will not be deemed to have commenced before registration if the infringing activity ceased for an appreciable period of time. In such a case, the copyright owner could recover statutory damages and attorney's fees for that new, post-registration act of infringement....

*Troll*, 483 F.3d at 158–59 (internal quotations and citations omitted).

Where, as here, the infringement is alleged to have commenced prior to registration and continued after registration, without cessation for any appreciable duration, statutory damages and attorneys' fees are unavailable. *See U2 Home Entertainment, Inc. v. Hong Wei Intern. Trading, Inc.*, 04CV6189, 2008 WL 3906889, at *14 (S.D.N.Y. Aug.21, 2008) ("Section 412 imposes a bright-line rule, barring the recovery of statutory damages for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration." (internal quotations and citations omitted)); *see also Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir.1998) ("Every court to consider this question has come to the same conclusion; namely, that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting infringement occurs."). The plaintiff alleges no facts to convince the Court to depart from the bright-line rule in this case, so that statutory damages and attorneys' fees are precluded in this action.

### 2. Count II—Misappropriation of Trade Secrets

The plaintiffs bring their claim for misappropriation of trade secrets pursuant to the Illinois Trade Secret Act, 765 I.L.C.S. § 1065/1, *et seq.* ("ITSA"). The defendant does not dispute the propriety of the CA's decision to bring its misappropriation claims under the ITSA. *See C & F Packing Co., Inc. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed.Cir.2000) (finding that a claim under Illinois law is plausible where the defendant transacted business in Illinois). However, the defendant contends that this claim is also barred by the applicable statute of limitations.

The Illinois Trade Secret Act provides that "[a]n action for misappropriation must be brought within 5 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of [the] Act, a continuing misappropriation constitutes a single claim." 765 I.L.C.S. § 1065/7. As the Illinois statute runs from the time of discovery, rather than the time of an injury, it logically follows that the defendant's actions in specifically denying use of CA's source code and concealing its activities worked to delay the running of the limitations period. Simply put, having already determined that the complaint contains allegations sufficient facts to support a finding of fraudulent concealment and equitable estoppel, the Court likewise finds that the plaintiffs reasonably could not have discovered their misappropriation claims more than five-years prior to filing suit.

In *Mopex, Inc. v. Barclays Global Investors, N.A.*, 01CV5976, 2003 WL 880996 (N.D.Ill. March 05, 2003), the court found that the plaintiff should have discovered its trade secret claims when the defendant's financial product was first published and publicly traded on the American Stock Exchange, more than five years prior to commencement of the action. *Mopex* differs from the present case for two important reasons. First, in *Mopex* the product at issue was publicly traded and published on the American Stock Exchange, and the similarities to the plaintiff's product were easily identifiable. Here, given the esoteric nature of computer source-code and the security measures used to prevent disclosure of such source-code, discovery of misappropriation would require either an admission of copying or inspection of defendant's source-code neither of which occurred. Second, added to the inherent difficulties of copying detection based on the products at issue, Rocket stated that it conducted a thorough investigation and af-

firmatively denied use of the plaintiffs' code, further inhibiting CA's discovery. Accordingly, the defendant's motion to dismiss the plaintiffs' claim for misappropriation of trade secrets based on the defense of the statute of limitations is denied.

### 3. Count III—Unfair Competition

The Illinois Consumer Fraud and Deceptive Trade practices Act, 815 I.L.C.S. § 505/2 *et seq.* ("ICFA"), provides that: "Unfair methods of competition and unfair or deceptive acts or practices ... with intent that others rely upon [such practices] ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

#### A. Statute of Limitations

■ The ICFA provides for a three year statute of limitations and, similar to ITSA's discovery rule, a claim accrues "when the plaintiff knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434, 441 (7th Cir.1994) (internal quotations and citations omitted); *Engineering Resources, Inc. v. CRS Steam, Inc.,* No. 94CV6970, 1996 WL 73616, at *6 (N.D.Ill. Feb. 16, 1996). As with the plaintiffs' claim for misappropriation of trade secrets, the plaintiff has sufficiently pleaded that the defendant's statements that it mounted an investigation and found no indication of inappropriate use of CA's intellectual property reasonably delayed the plaintiffs' discovery of their claims. Thus, the defendant's motion to dismiss the unfair competition cause of action based on the statute of limitations is denied.

#### B. Sufficiency of the Pleadings

The defendant contends that the plaintiffs lack standing under the ICFA because: (1) they are not Illinois consumers; (2) they have not pleaded harm accruing to Illinois consumers; and (3) they have not pleaded facts sufficient to establish a nexus between the defendant's trade practices and injury to any Illinois consumer. In contrast, the plaintiff contends that competitors have standing to sue under the ICFA and that the complaint sufficiently alleges that the defendant has falsely passed its products off to consumers as originally created by Rocket.

■ "The Illinois Consumer Fraud and Deceptive Business Practices Act ... is designed to protect consumers, borrowers and businessmen from deceptive acts or practices in the conduct of any trade or commerce.... The act has been interpreted to permit business competitors to sue to redress competitive injuries they suffer as a result of deceptive practices by other businesses." *Champion Parts, Inc. v. Oppenheimer & Co.,* 878 F.2d 1003, 1008–09 (7th Cir.1989). In order to maintain an action under the ICFA, a competitor plaintiff must show that the practices of the defendant are of the type which *affect* consumers. *Id.* at 1009. Although a connection to consumers is required, the ICFA expressly rejects the requirement that the plaintiff show an injury to or *effect* on consumers generally. *ASI Acquisition, LLC. v. Rayman,* No. 01CV0165, 2002 WL 335311, at *2 (N.D.Ill. Feb.28, 2002). Thus, "claims brought by such parties under the Consumer Fraud Act must meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise relates to consumer protection issues." *Id.* (internal quotations and citations omitted); *see also Republic Tobacco, L.P. v. North Atlantic Trading Co.,* No. 98CV4011, 1999 WL 261712, at *9 (N.D.Ill. April 9, 1999).

The complaint states, in part:

Rocket has employed and currently employs unfair business practices by having used and continuing to use CA's copyrighted and trade secret information, without CA's permission, to develop DB2 products that directly compete with CA's DB2 Products, and licensing these illegally-developed products to its OEM partners....

Rocket's conduct offends public policy as established by [ICFA], common law or otherwise, is unfair and unscrupulous, and has resulted in and continues to result in substantial injury to consumers.

Rocket intends for its marketing partners, including IBM and IBM's customers, to rely on its unfair business practices and accept that the software used in Rocket's DB2 products was originally developed by Rocket.

CA has sustained enormous economic and irreparable harm as a result of Rocket's unfair business practices.

(Amend.Compl.¶¶ 70–73).

The Court finds that the plaintiffs' allegation of a consumer connection under ICFA is not concrete. Indeed, the plaintiffs have failed to allege how Rocket's development of its DB2 products and its sale of those products under its own name to consumers directly raise consumer protection concerns, even if based on CA's source code. *See Republic Tobacco*, 1999 WL 261712, at *9 (finding the plaintiff's claims that the defendant wrongfully diverted sales, thereby affecting the supply of plaintiffs' products available for purchase by consumers, "far too indirect to satisfy the consumer nexus requirements" because the plaintiff failed to identify any misrepresentation by defendants which affected consumers). Accordingly, the plaintiff's ICFA claim is dismissed without prejudice.

### 4. Count IV—Conversion

#### A. Statute of limitations

The statute of limitations governing a claim of conversion is three years and "begins running from the date of the tort, not from the date of discovery or the exercise of diligence to discover [it]." *Barrett v. Huff*, 6 A.D.3d 1164, 1166, 776 N.Y.S.2d 678 (4th Dep't 2004). However, New York courts have applied the doctrine of equitable estoppel to conversion claims where the plaintiff is "induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Simcuski v. Saeli*, 44 N.Y.2d 442, 449, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978). As noted above, the plaintiff has sufficiently claimed misrepresentations by the defendant that would reasonably have forestalled the filing of a timely action. Therefore, the plaintiff's conversion claim is not time-barred.

#### B. Sufficiency of the Pleadings/Preemption by the Copyright Act

The defendant contends that CA has failed to state a claim for conversion because the complaint does not allege that Rocket's misappropriation of source code was to the exclusion of the plaintiffs' own use of that source code. In addition, the defendant contends that the plaintiffs' claim for conversion is pre-empted by the Copyright Act. As the Court finds CA's conversion claim preempted as presently written, it does not reach the sufficiency issue.

"Pursuant to Section 301(a) of the Copyright Act, federal copyright law will preempt a state law claim when two conditions are satisfied. First, the subject matter of the work upon which the state claims are premised must fall within the subject matter [protected by] the Copyright Act.... Second, the rights that are

asserted under the state law must be equivalent to those protected by the Copyright Act." *Sun Micro Medical Technologies Corp. v. Passport Health Communications, Inc.*, No. 06CV2083, 2006 WL 3500702, at *11 (S.D.N.Y. Dec. 4, 2006) (internal quotations and citations omitted). "The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). Further, "[a] work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense." *Id.* The second requirement, known as the "general scope" requirement "is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Id.* Such acts include reproduction, adaptation, performance, distribution or display. *See id.*

In *Sun*, the Court held the plaintiff's claims preempted where the plaintiff claimed wrongful conversion of information without adequate compensation. *Sun*, 2006 WL 3500702, at *12. The Court found that because the conversion claim comprised the same materials for which the plaintiff sought copyright protection, rather than conversion of physical documents, conversion was preempted. *Id.; cf. Dyer v. V.P. Records Retail Outlet, Inc.*, No. 05CV6583, 2008 WL 2876494, at *6 (S.D.N.Y. July, 24 2008) (finding conversion claim not preempted were it was limited to physical copies of the plaintiff's song and video); *see also* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 1.01[B][1][i] ("The torts of conversion and trespass relate to interference with *tangible* rather than intangible

property, and hence should be held immune from preemption." (emphasis added)).

To avoid preemption, the plaintiff argues that its conversion claim concerns subject matter entirely different than that protected by the Copyright Act including certain undefined "trade secrets." However, the plaintiffs' conversion claim is not so narrowly drawn. CA's conversion claim states:

> The proprietary information that Rocket stole, including all versions and all copies thereof, in any form, including paper or electronically-stored copies, are the sole and exclusive property of CA. CA has the exclusive right to possession and control of this information and all copies thereof.
>
> . . . .
>
> CA has the right to the immediate return of all copies of its information, and has demanded that Rocket return them immediately. Rocket has not done so.

(Amend.Compl.¶¶ 76–78).

The subject of this claim is generally the plaintiffs' "proprietary information," and merely "includes" the physical copies thereof, but does not limit the claims in that way. As this claim depends on the same material present in the plaintiff's Copyright Act claims, the plaintiff's conversion claim is preempted. Accordingly, the plaintiffs' claim for conversion is dismissed, without prejudice.

## 5.  Count V—Trespass to Chattels

### A.  Statute of Limitations

■  Pursuant to New York law, a claim for trespass to chattels is subject to a three-year statute of limitations. *Ruddy v. Citibank, N.A.*, 224 A.D.2d 509, 509 637 N.Y.S.2d 793 (2d Dep't 1996). "A claim

for trespass may be considered a continuing offense, whereby 'each day the rightful possessor's use and enjoyment of the chattel is impaired,' a new claim accrues". *Lennon v. Seaman*, 63 F.Supp.2d 428, 440 (S.D.N.Y.1999) (quoting *Weisman v. Rosenker*, No. 84CV2258, 1985 WL 182 *2 (S.D.N.Y. Jan.10, 1985) ("A trespass to chattel is a continuing violation.... [T]hus a trespass to chattels claim is never time-barred.")).

In addition, where the defendant wrongfully conceals its misconduct, regardless of whether such conduct amounts to either trespass or conversion, the plaintiff may estop the defendant from raising a statute of limitations defense. *Id.* at 440–41. Here, the Court finds that the plaintiff has adequately pleaded concealment and the plaintiffs' trespass to chattels claim is timely.

### B. Sufficiency of the Pleadings/Preemption by the Copyright Act

As with CA's claim for conversion, it seeks to avoid preemption of its trespass to chattels claim by arguing that the trespass claims are limited to tangible and other non-copyrightable items. However, the plaintiffs' Count V broadly states:

> CA has at all times had legal title to the *source code* and other trade secrets that are the subject of this Complaint, including all versions and copies thereof in any form, including paper and electronically-stored copies.

> Defendant intentionally and illegally interfered with CA's ownership and possession of its trade secret information when it approved of or directed the former Platinum engineers to use or assist other rocket employees in using CA's information to develop products that

function like and directly compete with CA's DB2 Products.

(Amend.Compl.¶¶ 81–82).

As this claim is not limited to the types of materials suggested by the plaintiffs and includes the source-code materials protected by the Copyright Act, the plaintiffs' trespass to chattels claim is preempted. *Sun*, 2006 WL 3500702, at *11; *cf. Lennon*, 63 F.Supp.2d at 436 ("Where a state law claim is based on interference with tangible property rather than the intangible copyrights, the claim is not the equivalent of rights protected by the copyright laws.") Accordingly, this count of trespass to chattels is dismissed, without prejudice.

### 6. Count VI—Intentional Interference with Prospective Economic Advantage

The plaintiffs claim interference with prospective economic advantage in that CA has a reasonable expectation of continuing and advantageous relationships with current and prospective purchasers and licensees of its DB2 products, with a market potential of approximately $1.4 billion. CA contends that Rocket intentionally and illegally interfered with these economic relationships by approving of or directing the former Platinum engineers to use or assist in the use of CA's information to develop products that function like and directly compete with CA's DB2 products.

### A. Statute of Limitations

"The statute of limitations for a cause of action alleging tortious interference with precontractual relations and prospective economic advantage is three years." *Radin v. Albert Einstein College of Medicine of Yeshiva University*, 04CV704, 2005 WL 1214281, at *15 (S.D.N.Y. May 20, 2005); *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993).

The limitations period may be tolled "where the defendant conceals from the plaintiff the fact that he has a cause of action [or] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired." *Pasqualini v. MortgageIT, Inc.*, 498 F.Supp.2d 659, 669 (S.D.N.Y.2007). As explained above, the Court finds that the plaintiffs had pleaded sufficient facts to state a claim for equitable estoppel based upon the defendant's alleged concealment and affirmative denials of misuse of CA's intellectual property.

### B. Sufficiency of the Pleadings

The defendant contends that CA's claim for intentional interference with prospective economic advantage fails because it does not specifically identify the third parties who were dissuaded from entering into business relationships with the plaintiffs, and it does not allege that these contracts would have been entered into "but for" the defendant's conduct. In contrast, the plaintiffs contend that no specific third parties need be identified and it need not plead causation of the "but for" variety.

■ A successful claim for tortious interference with prospective economic advantage requires the plaintiff to plead and prove that: "(1) there is a business relationship between [the plaintiff] and a third party; (2) the defendant, knowing of that relationship, interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir.1997). The Second Circuit has stated that "it is well-settled that a plaintiff can recover if that plaintiff can prove that the defendant tor-

tiously interfered with 'a continuing business or other customary relationship not amounting to a formal contract.'" *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 205 (2d Cir.1998) (quoting Restatement (Second) of Torts § 766B cmt. c (1979)). Courts have found proof of interference with the sale of goods or services to existing customers sufficient to state a claim for this tort. *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, No. 95CV0508, 1998 WL 704112, at *16 (E.D.N.Y. Oct. 07, 1998) (denying summary judgment where the undisputed facts showed that the plaintiff's longstanding customers began to purchase merchandise from the defendant). Thus, although the plaintiff need not allege interference with a formal contract, it must allege interference with an existing or continuing business relationship.

■ Here, in this regard, the complaint alleges that "CA has a reasonable expectation in continuing and advantageous economic relationships with current and prospective purchasers and licensees of its DB2 products." (Amend. Compl.¶ 85). Although one portion of the plaintiffs' claim concerns "continuing" economic relationships with "current" purchasers, the portion of the claim seeking recovery for interference with "prospective" purchasers does not satisfy the element of an existing economic relationship. *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, 03CV3120, 2005 WL 1902780, at *19 (S.D.N.Y. Aug.09, 2005) (dismissing an interference with prospective economic relations claim where the plaintiff failed to allege relationships with third parties that were in existence at the time of the alleged interference).

Moreover, the plaintiff has failed to plead exactly which "current" purchasers were dissuaded from purchasing CA's product. Recently, in *Johnson & Johnson v. American Nat. Red Cross*, 528

F.Supp.2d 462 (S.D.N.Y.2008), the court explained that "New York courts have dismissed complaints that failed to allege the specific business relationship that was interfered with." *Id.* at 464. The *Johnson & Johnson* court allowed the plaintiff's prospective economic advantage claims to go forward with respect to four customers specifically named in the complaint, but limited the claim to those specific entities "to avoid prejudice to the defendants." *Id.; see also Envirosource, Inc. v. Horsehead Resource Dev. Co.,* No. 95CV5106, 1996 WL 363091, at *14 (S.D.N.Y. July 1, 1996) ("A 'general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship' will not withstand a motion to dismiss.") (quoting *McGill v. Parker,* 179 A.D.2d 98, 582 N.Y.S.2d 91, 95 (1st Dep't 1992)); *Kramer v. Pollock–Krasner Found.,* 890 F.Supp. 250, 258 (S.D.N.Y. 1995) ("[A] claim for interference with advantageous business relationships must specify some particular, existing business relationship through which plaintiff would have done business but for the allegedly tortious behavior."). For these reasons, the plaintiffs' claim for intentional interference with prospective economic advantage is dismissed without prejudice.

### 7. Count VII—Unjust Enrichment/Restitution

#### A. Statute of Limitations

The plaintiffs' seventh and final claim seeks recovery for unjust enrichment. The defendant contends that although a claim for unjust enrichment is governed by a six-year limitations period, where the claim is duplicative of another claim with a shorter limitations period, that shorter period applies. Further, the defendant argues that because the plaintiffs' unjust enrichment claim is essentially a reiteration of its copyright and misappropriation claims, the shorter statute of limitations applicable to those actions must apply here. However, as the Court has already determined that the plaintiff has pleaded facts sufficient to support equitable estoppel and tolling for those causes of action, it makes that same determination here. Accordingly, the plaintiffs' unjust enrichment claim is timely.

#### B. Preemption by the Copyright Act

The plaintiffs' unjust enrichment claim states that the "Defendant unjustly received benefits at the expense of CA through the wrongful conduct alleged in this Complaint, including infringement of CA's copyrights and misappropriation of its trade secrets, which took substantial time and money for CA to develop, as well as unfair business practices...." (Amend. Compl.¶ 92). The complaint seeks remuneration for these benefits.

The Second Circuit has found that "[w]hile [the element of] enrichment is not required for copyright infringement, we do not believe that [the difference] goes far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim." *Briarpatch,* 373 F.3d at 306 (finding the plaintiff's unjust enrichment claim based upon derivative use of a novel and a screenplay preempted by the federal Copyright Act); *see also Atrium Group de Ediciones y Publicaciones, S.L. v. Abrams,* No. 08CV1569, 2008 WL 2743517, at *3 (S.D.N.Y. July 11, 2008) ("The Second Circuit has held that the Copyright Act preempts a state law claim for unjust enrichment unless the claim has some 'extra element' that renders it qualitatively different from a copyright infringement claim.").

Here, a portion of CA's claim for unjust enrichment is based upon infringement of

its copyrights and is, therefore, preempted. However, as a portion of this claim is drawn to yet undefined but allegedly non-copyrightable "trade secrets," the Court is without sufficient information to make a determination as to whether that portion of the claim is "qualitatively different" from the plaintiffs' copyright claim. Accordingly, the defendant's motion to dismiss the plaintiffs' unjust enrichment claim for inappropriate use of its non-copyrightable "trade secrets" is denied, without prejudice to renew.

### III. CONCLUSION

For the foregoing reasons it is hereby:

**ORDERED,** that Rocket's motion to dismiss the plaintiffs' copyright infringement claim on statute of limitations grounds is denied; and it is further

**ORDERED,** that Rocket's motion to preclude the plaintiffs from seeking statutory damages and attorneys' fees is granted; and it is further

**ORDERED,** that Rocket's motion to dismiss the plaintiffs' misappropriation of trade secrets claim is denied; and it is further

**ORDERED,** that the plaintiffs' unfair competition claim is dismissed, without prejudice; and it is further

**ORDERED,** that the plaintiffs' conversion claim is dismissed without prejudice; and it is further

**ORDERED,** that the plaintiffs' trespass to chattels claim is dismissed without prejudice; and it is further

**ORDERED,** that the plaintiffs' intentional interference with prospective economic advantage claim is dismissed without prejudice; and it is further

**ORDERED,** that Rocket's motion to dismiss the plaintiffs' unjust enrichment claim is granted insofar as that claim relies on copyright infringement, and denied insofar as the claim relies on alleged misappropriation of trade secrets, without prejudice to renew the motion at a later time; and it is further

**ORDERED,** that the plaintiffs are given leave to amend their complaint with respect to the matters addressed herein and are directed to serve a second amended complaint, if any, within twenty (20) days of the date of this Decision and Order.

**SO ORDERED.**